UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

In re:                                                  Case Number: 11-16408-7

HARRY VINER, INC.,

        Debtor.

---

## DECISION

The matter before the Court is the final application of Debtor's counsel, Galen W. Pittman, S.C., for compensation and disbursements. For the reasons that follow, the application is approved in part and denied in part.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" over all cases under title 11 ("Bankruptcy Code" or "Code") and "original but not exclusive jurisdiction" over all civil proceedings that arise under the Bankruptcy Code or that arise in or are related to cases under the Code. 28 U.S.C. §§ 1334(a)-(b). The district courts may, however, refer such cases to the bankruptcy judges within their district. In the Western District of Wisconsin, the district court has made such a reference. *See* Western District of Wisconsin Administrative Order 161 (July 12, 1984). Accordingly, this Court "may hear and determine all cases under title 11 and all core proceedings under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1).

Bankruptcy courts determine whether a proceeding is core or non-core. 28 U.S.C. § 157(b)(3). Applications for compensation and reimbursement of expenses under 11 U.S.C. § 330 are core proceedings insofar as they concern the administration of the estate and are proceedings for the allowance of claims against the estate. 28 U.S.C. §§ 157(b)(2)(A), (B).

### FACTS AND PROCEDURAL HISTORY

The Debtor, Harry Viner, Inc., filed a voluntary Chapter 11 petition on October 21, 2011. On December 1, 2011, the Debtor filed an application to employ Galen W. Pittman, S.C. ("Pittman S.C.") as attorney on a general retainer. The application contemplated "any representation relating to actions by creditors, the preparation of the liquidation analysis and preparation and representation and [sic] the Plan and any and all residual matters relating to the Chapter 11 Proceedings until the confirmation of the Chapter 11 Plan and related matters." On December 8, 2011, the Court approved the application.

On March 1, 2013, Pittman S.C. filed an Amended Application for Interim Allowance of Compensation and Disbursements ("Interim Application"). The Interim Application sought compensation of $58,773.75 and reimbursement of $1,486.13 in expenses for the period from October 28, 2011, through February 26, 2013. After an evidentiary hearing at which the Court concluded that a portion of the work for which Pittman S.C. sought compensation was not performed on behalf of the Debtor, but rather on behalf of the Debtor's sole principal in her individual capacity in a state court

2

proceeding, the Court denied compensation in the amount of $1,300, but approved the remainder of the application. The Order concerning the Interim Application was entered on June 27, 2013.

On June 25, 2013, the Debtor's amended plan was confirmed following an evidentiary hearing. The confirmation order was entered on July 18, 2013.

The confirmed plan provided that the Debtor would make periodic payments to its creditors. After the Debtor failed to make several payments called for in the plan, including quarterly tax payments, priority plan payments, and payments to general unsecured creditors, the United States Trustee ("UST") and an unsecured creditor filed motions to convert or dismiss the case. The Debtor filed a proposed modified plan on January 15, 2014, and objected to the motions to convert or dismiss. At an evidentiary hearing on the motions, the Debtor conceded that the confirmed plan had been substantially consummated. At the close of the evidentiary hearing, on January 28, 2014, the Debtor's case was converted to a case under Chapter 7.

On January 22, 2014, Pittman S.C. filed another fee application titled "Interim Application by Attorneys for Debtors/Debtors in Possession for Interim Allowance of Compensation and Disbursements" ("Final Application")[1] The Final Application included itemizations for time and expenses for the period

---

[1]Although the document is styled as an "interim" application, on April 22, 2014, Pittman S.C. clarified that the application should be treated as a final application.

June 26, 2012, through January 22, 2014.[2] The UST objected to the Final
Application, as did the Chapter 7 Trustee.[3] The UST's objection recites
numerous failures of the Debtor to comply with or fulfill the terms of the
confirmed plan. The UST asserts those failures evidence counsel's failure to
"adequately advise the Debtor regarding obligations with respect to the Debtor's
Plan." Examples of the Debtor's failures include filing operating reports that
wrongly state that all post-petition taxes (other than sales tax) were current,
making payments to former shareholders before payments to other classes of
creditors, and failing to sell certain collateral as provided in the plan to make
payments to secured creditors. Counsel was acting as a disbursing agent at the
time of each of these failures.

Although they were not raised as an objection by the UST, the Court has
identified other deficiencies and errors that must also be addressed. *See In re
TAK Commc'ns, Inc.*, 154 B.R. 514, 516 (Bankr. W.D. Wis. 1993) ("Whatever its
responsibility may be in the absence of any objection, once an objection has
been made and evidence and argument have been presented in support of the

---

[2] The detailed invoices contain time entries with dates that appear to be in
October and November 2014. Attorney Pittman explained the formatting of dates was
in error and the entries were, in fact, for time in January 2014.

[3] The Chapter 7 Trustee's objection was styled as a "protective" objection that
was filed because the trustee had "not had sufficient time to review the claim," "not
been able to determine whether the estate will have sufficient funds to pay that claim,"
and been "unable to determine if the services rendered were reasonable and of benefit
to the Bankruptcy Estate." No further comment or objection has been received from
the Chapter 7 Trustee.

objection, a court may not adopt the ostrich's fabled position, but rather must assess the reasonableness of the fee application."). Such deficiencies include: the inclusion in the Final Application of sums previously disallowed by the Court, duplicate time entries, vague descriptions of services, lumping of entries, and failure to clearly state the total and actual amount of compensation sought on a final basis.

Although the Final Application fails to clearly describe the amounts sought as final compensation, the history and applications before the Court for final approval can be summarized as:

|  | Time Period | Fees Requested | Costs Requested | Approved Fees & Costs |
|---|---|---|---|---|
| 1st Amended Interim Application | 10/28/11 - 2/26/13 | $ 61,746.01 | $1,486.13 | $58,959.88 |
| 2nd Amended Final Application | 6/26/12 - 1/22/14 | 57,117.60 | 1,062.60 | |
| Total | | $118,863.61 | $2,548.73 | |

## STATEMENT OF LAW

### 11 U.S.C. § 330

Unlike many scenarios outside of bankruptcy, attorney's fees in bankruptcy are not purely a private matter to be negotiated by the parties. *In re S.T.N. Enters., Inc.*, 70 B.R. 823, 831 (Bankr. D. Vt. 1987). The fees sought by counsel for the debtor are, instead, subject to the supervision and approval of the bankruptcy court. 11 U.S.C. §§ 327(a), 1107(a); Fed. R. Bankr. P. 2104(a). *In re S.T.N. Enters., Inc.*, 70 B.R. at 831; *see also In re Fibermark, Inc.*, 349 B.R.

5

385, 393-94 (Bankr. D. Vt. 2006). The Bankruptcy Code requires the Court to satisfy itself independently that compensation sought from the estate is reasonable, and that the services and expenses that were actually incurred were necessary. *Id.* (citing *In re Int'l Coins & Currency, Inc.*, 26 B.R. 256, 260 (Bankr. D. Vt. 1982)); *see also In re Fibermark, Inc.*, 349 B.R. at 394.

Applications for compensation to officers of the estate, including attorneys employed by the debtor in possession, are governed in part by 11 U.S.C. § 330. The statute provides that:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to . . . a professional person employed under section 327 or 1103—
>
> > (A) reasonable compensation for actual, necessary services rendered by the . . . professional person, or attorney and by any paraprofessional person employed by any such person; and
> >
> > (B) reimbursement for actual, necessary expenses.
>
> (2) The court may, on its own motion or on the motion of the United States Trustee . . . or any other party in interest, award compensation that is less than the amount of compensation that is requested.

11 U.S.C. § 330.

In addition to empowering the Court in its discretion to award or deny compensation, the statute provides a non-exclusive list of relevant factors to consider in determining the amount of reasonable compensation to be awarded:

> (3) In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the

6

extent, and the value of such services, taking into account all relevant factors, including—

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.*

The statute also specifically prohibits compensation under certain circumstances:

> (4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—
>
> (i) unnecessary duplication of services; or
>
> (ii) services that were not—
>
> > (I) reasonably likely to benefit the debtor's estate; or
> >
> > (II) necessary to the administration of the case.

*Id.*

7

In sum, section 330 empowers the Court to award, in its discretion, reasonable compensation for actual, necessary services, and reimbursement for actual, necessary expenses, but it prohibits compensation for services that were unnecessarily duplicative or not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case." 11 U.S.C. § 330(a)(1), (a)(4)(A); *In re Devine*, No. 08-15291, slip op. at 6 (Bankr. W.D. Wis. July 15, 2013) (citations omitted). Section 330(a)(1) is "intended to allow lawyers and other professionals retained by the trustee to get compensation comparable to what they would receive in nonbankruptcy cases." *In re Taxman Clothing Co.*, 49 F.3d 310, 313 (7th Cir. 1995). Counsel seeking fees from the bankruptcy estate has the burden of showing that his or her request comports with the requirements of the Code. *See, e.g.*, *In re S.T.N. Enters., Inc.*, 70 B.R. at 832 (citing *In re Chapman Farms*, 58 B.R. 822, 824 (Bankr. W.D. Wis. 1986); *In re Four Star Terminals, Inc.*, 42 B.R. 419, 429 (Bankr. D. Alaska 1984); *In re Hamilton Hardware Co.*, 11 B.R. 326, 329 (Bankr. E.D. Mich. 1981)).

Part and parcel of this burden is the responsibility to include sufficient detail in the application to enable the Court to make an informed judgment about the reasonableness of the fees sought and the necessity and benefit of the work performed. *See, e.g.*, *In re Minich*, 386 B.R. 723, 727 (Bankr. C.D. Ill. 2008); *In re Wiedau's, Inc.*, 78 B.R. 904, 907-08 (Bankr. S.D. Ill. 1987) (citing *In re Wildman*, 72 B.R. 700, 707 (Bankr. N.D. Ill. 1987)) ("The primary objective of any fee petition is to reveal sufficient data to enable the Court to determine

8

whether the services rendered were reasonable, actual and necessary."). This requires counsel to submit a detailed statement of each service provided, the time expended, and the fee requested. *In re Minich*, 386 B.R. at 727.

Because they impede the Court's ability to clearly understand the nature of the work for which compensation is sought, certain billing practices are unacceptable. For instance, bare billing entries for activities like a "telephone call" or a "conference" which do not offer any context or explanation for the charges do not enable the Court to assess the necessity of the services rendered. *See, e.g.*, *In re S.T.N. Enters., Inc.*, 70 B.R. at 832. Likewise, the practice of "lumping"—which is to say, some lawyers' habit of including several different activities into a single time entry—may prevent the Court from determining whether the time spent on each individual activity was reasonable or necessary. *See, e.g.*, *In re Wiedau's, Inc.*, 78 B.R. at 908; *In re Wildman*, 72 B.R. at 708. These opaque billing practices, and others like them, are generally suspicious and, in the absence of a compelling explanation, are subject to disallowance. *See id.*

These considerations are not, however, inflexible. Counsel for debtors must balance the requirements of providing sufficient detail to enable the court and parties to be reasonably informed about the services performed against the cost and inefficiency of separating every single task no matter how small the time or how related the entries may be to one another. At the same time, during the course of a case there are also matters that clearly invoke strategic

considerations that should be kept confidential when, for example, negotiations

or contested matters are being litigated. As noted, a billing entry that merely

states "telephone call" is not sufficient because the reader cannot ascertain

from the description the subject matter or even whether the call is related to

the instant case. A description that states, for example, "telephone call with

Debtor Jane Doe to discuss potential settlement parameters for preference

demands" would provide information permitting a conclusion the call was

related to the instant case and an understanding of the general subject matter

without disclosing potentially strategic information.

Similarly, the Court recognizes that in some instances lumping time is a

practical and cost-effective method of description. Since attorneys generally

keep time in increments of three to six minutes, it is impractical to note every

single entry that amounts to .05 or .1. To do so may risk losing time entries or

overstating actual time. Further, it may result in more time expended in "time

keeping" activities than in the actual time expended. A time entry such as

"Review e-mail exchanges with Committee counsel and Bank counsel re

revisions to Disclosure Statement (.50)" might be an appropriate balance

between providing relevant detail and cost effectiveness. On the other hand,

lumping time for revision of three separate adversary complaints into a single

time entry of 2.5 hours is not appropriate. Neither does a time entry in which

services are lumped and described vaguely, such as "[Baker] Prepare for trial -

reviewed documents - exhibits - research - drafted documents - reviewed legal

matter - work on file," provide any basis to determine whether the time spent was actually reasonable or necessary for the services.

There must be a balance between the separation of entries to provide reasonable detail for the entry, including the amount of time, against unnecessary demands to provide excessive separation of time when, in the aggregate, the time is relatively minimal or the activities are similar, such as review of numerous e-mails all related to the same subject. While there should be detail sufficient to provide some basis to determine whether the subject matter and time were necessary, there is a law of diminishing returns in requiring separation of every single task or service. It would be absurd to require separate time entries for every e-mail—particularly if the subject matters or the nature of the services are the same (and are described) and the aggregate time for the entry is not substantial. At the same time, some detail regarding the subject matter and permitting an assurance the time is related to this case are essential to the ability of the Court and parties to evaluate reasonableness.

As noted, under section 330 the Court may award reasonable compensation to a professional person employed under 11 U.S.C. § 327 or § 1103 for the actual, necessary services rendered. The compensation award is based on the nature, extent, and value of such services, the time spent on such services, and the cost of comparable services other than in a bankruptcy case. The balancing of two policies underlies section 330: economizing in the interest

of the estate while encouraging qualified lawyers to take bankruptcy cases. *See*

S. Rep. No. 95-989, 94th Cong. 2d Sess. 40-41 (1978). This requires

examination of both the necessity and reasonableness of the services.

<u>Necessary</u>

The Court first determines whether the services for which compensation

is sought were necessary. *See In re Lederman Enters., Inc.*, 997 F.2d 1321,

1323 (10th Cir. 1993). A significant element of the "necessity" test is the

adequacy of the description of the services for which compensation is sought in

the fee application. *In re Minich*, 386 B.R. at 727. Without a sufficient narrative

explanation of the "how" and the "why," it is not possible for the Court to

determine whether or not the services were necessary. *Id.* (quoting *In re*

*Wildman*, 72 B.R. at 707). To this end, the application should contain all of the

necessary information to enable the Court to make the determination. *Id.*

(citing *In re Lindberg Prods., Inc.*, 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985)). The

Court will not "search through volumes of pleadings in a bankruptcy case and

related adversary proceedings in an attempt to find justification for the legal

services rendered and the fees requested." *Id.* (citing *In re Taylor*, 66 B.R. 390,

393 (Bankr. W.D. Pa. 1986)). The absence of an adequate narrative explanation

of the necessity of the services rendered is enough to warrant disallowance. *Id.*

at 728 (citing *In re Vancil Contracting, Inc.*, No. 06-71254, 2008 WL 207533

(Bankr. C.D. Ill. Jan. 25, 2008)).

<u>Reasonableness</u>

To ascertain whether the fees sought are reasonable, the statute requires the Court to consider "the nature, the extent, and the value" of the services for which compensation is sought. 11 U.S.C. § 330(a)(3). An important element of the reasonableness determination is the clarity and specificity of the fee request itself. *See, e.g.*, *In re S.T.N. Enters., Inc.*, 70 B.R. at 830. The Court is instructed to take "all relevant factors" into account, including a number of enumerated factors. *Id.* To account for these factors, the "lodestar approach" is normally employed by many courts to gauge the reasonableness of a request for attorney's fees under section 330. *See In re Taxman Clothing Co.*, 49 F.3d at 315 (citing *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S. Ct. 939, 944-45, 103 L. Ed. 2d 67 (1989); *In re Boddy,* 950 F.2d 334, 337 (6th Cir. 1991)); *see also In re Lederman Enters., Inc.*, 997 F.2d at 1323. Under that approach, counsel is presumptively entitled to compensation calculated by the number of hours expended times the hourly fee, provided neither figure is excessive in relation to the results obtained and several other factors. *In re Taxman Clothing Co.*, 49 F.3d at 315.

The lodestar approach is not exclusive, however, and other factors may be considered where appropriate. *See In re Wildman*, 72 B.R. at 712. The factors promulgated in *Johnson v. Georgia Highway Exp., Inc.,* have been widely adopted by courts determining the reasonableness of fee requests. *See In re First Colonial Corp.*, 544 F.2d 1291 (5th Cir. 1977) (subsequent history

13

omitted); *In re RFS Ecusta Inc.*, 422 B.R. 53, 58 (W.D.N.C. 2009); *In re Ward*,

418 B.R. 667, 675 (W.D. Pa. 2009); *Grunau v. Waage (In re Waage)*, 376 B.R.

322, 331-32 (M.D. Fla. 2007); *In re Day*, 213 B.R. 145, 150 (C.D. Ill. 1997); *see

also In re Citation Corp.*, 493 F.3d 1313, 1317 n.3 (11th Cir. 2007) (citing

sixteen-item list of factors, including *Johnson* factors). Although elements of

several of the *Johnson* factors were incorporated into the language of section

330(a) by the 1994 Bankruptcy Reform Act, the *Johnson* list is a helpful

catalogue of additional considerations in the reasonableness analysis:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance
of the case;

(5) the customary fee for similar work in the community;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client;
and

(12) awards in similar cases.

14

*Johnson*, 488 F.2d at 718-19 (5th Cir. 1974)*, abrogated by Blanchard*, 489 U.S.

at 94-96, 109 S. Ct. at 944-45 (endorsing list of factors as a "useful catalog of

the many factors to be considered in assessing the reasonableness of an award

of attorney's fees," but emphasizing that no factor is dispositive). In the present

case, whether the lodestar approach or the *Johnson* factors are employed in the

analysis, both are useful tools and the outcome is the same.

## ANALYSIS

Orders approving interim fee requests are interlocutory and remain

subject to review by this Court at any time during the proceeding, and

appropriate adjustments may be made at a later date. The final compensation

request includes a thorough analysis of total compensation after review of the

factors enumerated in the statute and the relevant case law as applied to the

facts and circumstances of the case.

Debtor's counsel in this case is an experienced and well-respected

practitioner. He is assisted by young lawyers who work under his supervision.

The rates charged are reasonable and consistent with rates charged by

similarly experienced attorneys in the same general geographic location.

This case was highly contested. There were numerous motions filed and

many hearings held. All parties in interest and their constituencies were

represented by able counsel who actively participated in the case. Ultimately, a

Chapter 11 plan was confirmed. Confirmation was not without contest and

required both careful negotiation of plan terms and a full evidentiary hearing

on various plan confirmation issues. While, ultimately, the Debtor was not able to fulfill all of the terms of the confirmed plan, the fact that the Debtor proposed a plan that was able to be confirmed must be given some weight. So too, the animosity between certain parties in the case and the Debtor is a factor to be considered in recognizing that more time may have been required for certain tasks than might have been expected in other cases.

There were decisions, such as the payments to the Debtor's former shareholders, that, in retrospect, may not have been advisable. However, the payment was consistent with the terms of the plan and with the terms of the settlement agreements with those former shareholders. Any party in interest could have objected to the plan provisions and asserted that payments to the former shareholders should have been required to be deferred until after the other classes of creditors were paid. Any party in interest could have objected to the terms of the settlement agreements that resolved the adversary proceedings against the former shareholders.[4] If such objections had been filed, the Court would have considered and ruled on such objections. However, no objections were pursued.

Attorneys are not guarantors of their clients' performance. Attorneys are obligated to explain the law and alternative courses of action to their clients. They must also inform their clients of the obligations the client is undertaking

---

[4] While the potential that the plan provisions related to the former shareholders might violate the absolute priority rule was initially raised in some objections, those objections were resolved and withdrawn before the final plan confirmation hearing.

16

in any plan that is proposed or confirmed. In this case, it is clear that the
Debtor understood the terms and provisions of the plan. The Debtor's president
testified to her understanding on at least two separate occasions. It is also
clear that while outside factors such as the realization on collection of accounts
receivable, sale of equipment, and locating a purchaser for rock piles that had
not yet been crushed were not entirely within the Debtor's control, they were
matters the Debtor needed to address. The Debtor's president acknowledged
these activities were crucial to performance of the plan terms. Counsel assisted
in pursuing some of those matters and that assistance and follow-up bears in
favor of the allowance of fees.

Moreover, examination of services such as the settlements with former
shareholders and subsequent payments to them must be performed from the
perspective of whether the services were calculated to benefit the estate when
they were performed, not whether, in hindsight, they resulted in an actual
benefit.

However, the application also seeks payments for unusual services that
were rendered under circumstances that weigh against allowance of all of the
fees sought for those services—namely, that counsel acted as a disbursing
agent for the Debtor. First, acting as a disbursing agent was not a service
included in the application for the employment of counsel. Second, acting as a
disbursing agent is not a service that requires a law degree or that is commonly
performed by an attorney. Third, by undertaking the duty of acting as a

17

disbursing agent, counsel placed himself in a position to be potentially aware of whether the Debtor was paying its taxes, of the amount of funds available for the Debtor's use, and of the disposition of those funds. However, it appears that not all expenditures of the Debtor (such as payroll and tax deposits) were disbursed by counsel. Rather, counsel was primarily responsible for distributions pursuant to the plan.

While assisting the Debtor in collection of accounts receivable were services both necessary and in support of the plan, the decision to prepare and pursue collection actions in the bankruptcy court was procedurally and jurisdictionally improper, and experienced counsel should have known this Court would not have jurisdiction over those proceedings. By now, it is a matter of hornbook law that the bankruptcy court has no basis to hear or enter final judgment in collection suits that arise entirely under state law. The coincidence of a simultaneous bankruptcy proceeding is insufficient to establish jurisdiction to hear such claims in this Court. As a result, Debtor's counsel had no defensible reason for filing adversary proceedings concerning the accounts receivable. This reality was even acknowledged by Debtor's counsel at a hearing on one such adversary proceeding when the Court raised its concerns about jurisdiction. Once those adversary proceedings were dismissed, additional time was expended to initiate collection actions in state court. Time for those services is also reflected in the Final Application. It would be totally inappropriate to award fees from the bankruptcy estate for litigation

18

that should not have been filed in this Court in the first place. Likewise, it would be inappropriate to approve the payment of the expenses associated with these misadventures to be paid from the bankruptcy estate. The Debtor seeks reimbursement of $435.94 for "court costs" incurred on May 23, 2013. While these fees may be related to the filing of the impermissible adversary proceedings, it cannot be known with any certainty on the basis of the record. Therefore, while the expenses would be disallowed in any case because of the impropriety of filing the adversary proceedings, they will be disallowed in this instance because the explanation of the expense is too vague to permit the Court to evaluate whether the fees were reasonable or necessary.

The application seeks compensation for duplicate time entries. In several places in the bills that have been submitted along with the application, entries appear that contain service descriptions and amounts owed that are identical to other entries in the same bill. Whether the entries actually correspond to other services, or whether they are in fact duplicates, they cannot be allowed because the Court cannot, based on the application, conclude the services were reasonable or necessary. Moreover, it is unclear whether the Final Application seeks allowance for the $1,300 that was previously disallowed by the Court. Counsel is not entitled to receive payment from the bankruptcy estate for $1,300 for services that were rendered on behalf of one of the officers of the Debtor in a state court matter. As such, the Court affirms its prior disallowance of those fees.

19

There are numerous other practical difficulties presented by the application. First, the Final Application does not set forth detail on amounts previously sought and approved, nor does it actually state the total amount of costs and fees subject to the request for approval. This omission has required the Court to analyze the applications in agonizing detail to confirm what is actually requested. Second, the time periods covered in the Interim Application (10/25/11 - 2/26/13) and the Final Application (6/26/12 - 10/22/14), while not identical, have substantial overlap. Again, the Court has been required to meticulously compare all time entries in the various applications to make sure the overlapping periods are not duplicates. The Court has done so in this instance because the record and applications are relatively small. However, it is not the Court's job to search the record for information that should be provided by counsel, and the Court will not do so in the future. Third, time entries and lists of costs are, at times, in jumbled chronological order. Each of these factors makes it difficult to ascertain the exact amounts sought.

As noted, it appears the Final Application seeks approval of $57,117.60 in fees and $1,062.60 in costs on a final basis. Because, however, these amounts are less than the amounts sought in the Interim Application for both costs and fees, the only logical conclusion is that the amount sought is the sum of the amounts reflected on the Interim Application and the Final Application less the $1,300 previously disallowed. Assuming that to be the case, fees of $118,863.61 and costs of $2,548.73 would total $121,412.34 as

20

the amount of the request. It appears payments and credits against this

amount totaling $60,259.88 have been received by counsel.

It is also worth noting that of the fees sought, approximately $25,887.50

was incurred post-confirmation. This decision addresses the amount of

compensation allowed under section 330. The Court has not been asked to

address the application of section 503(b) to those fees, and the Court therefore

declines to do so *sua sponte*.

Finally, there are a number of entries for services that are obviously

related to the case but appear to concern disparate subject matters and are

lumped into large blocks of time. As noted above, the practice of "lumping" is

subject to disallowance because it prevents the Court from determining how

much time was spent on each activity, which is required to determine whether

the compensation sought for the activity is reasonable. It is a careless and

unacceptable practice to lump multiple, unrelated activities into a single time

entry, and the Court wishes to warn counsel that, henceforth, time entries that

are not broken down by discrete activity and described in adequate detail will

be subject to disallowance.

## CONCLUSION

For the reasons stated, the amounts of $96,879.37 in fees and $2,112.79

in expenses are allowed. The remainder sought by the application is disallowed.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: August 5, 2014

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge